No. 88,403

In the Matter of E. COLLINS HUNTER II, *Respondent*.

(46 P.3d 1199)

Opinion filed May 31, 2002.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*E. Collins Hunter II,* respondent, argued the cause pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against the Respondent, E. Collins Hunter II, alleging violations of Kansas Rules of Professional Conduct (KRPC) 1.4(b) (communication) (2001 Kan. Ct. R. Annot. 334), 1.16(a)(1) (representing a client in violation of the KRPC) (2001 Kan. Ct. R. Annot. 387), 5.5(a) (unauthorized practice of law) (2001 Kan. Ct. R. Annot. 424), 8.4(d) (engaging in conduct prejudicial to administration of justice) (2001 Kan. Ct. R. Annot. 437), Kansas Supreme Court Rule 208(a) (attorney registration) (2001 Kan. Ct. R. Annot. 254), and Kansas Supreme Court Rule 218(a) (suspended attorney) (2001 Kan. Ct. R. Annot. 276). The panel recommends suspension from the practice of law for 90 days, and the Deputy Disciplinary Administrator recommends a suspension for 1 year. We adopt and impose the panel's recommendation of suspension from the practice of law for 90 days.

Hunter is an attorney admitted to the practice of law in Kansas in 1997. In his answer to the Deputy Disciplinary Administrator's formal complaint, the respondent admitted nearly all of the allegations contained in the formal complaint. The hearing panel admitted exhibits from the Deputy Disciplinary Administrator and the respondent without objection.

After hearing the testimony presented and the arguments of the parties, and after reviewing the exhibits admitted into evidence, the panel made the following findings of fact and conclusions of law:

"1. E. Collins Hunter (hereinafter 'the Respondent') is an attorney at law. . . . His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Kansas City, Missouri . . . .

"2. In 1992, the Respondent was admitted to the practice of law in Maryland. Thereafter, in 1996, the Respondent was admitted to the practice of law in Missouri. On April 25, 1997, the Respondent was admitted to the practice of law in Kansas.

"3. For the compliance period ending June 30, 1998, the Respondent failed to pay the registration fee, failed to pay the continuing legal education fee, and failed to report continuing legal education hours.

"4. On August 3, 1998, the Continuing Legal Education Commission sent the Respondent notice via certified mail, as required by Kan. Sup. Ct. R. 806(b), that the Respondent had failed to pay the continuing legal education fee and failed to report continuing legal education hours. The Respondent received that notice and personally signed the receipt for the certified mail. After receiving the notice that he failed to comply with the requirements to maintain his license, the Respondent took no corrective action.

"5. Thereafter, on November 4, 1998, the Kansas Supreme Court suspended the Respondent's license to practice law in Kansas for his failure to comply with the rules of the court. On November 5, 1998, the Clerk of the Appellate Courts sent the Respondent a copy of the Order of Suspension, via certified mail. The mailing was returned to the Clerk of the Appellate Courts, marked 'unclaimed.' From the face of the envelope, it is apparent that the United States Postal Service attempted to deliver the order on three dates.

"6. For the compliance period ending June 30, 1999, the Respondent failed to pay the registration fee, failed to pay the continuing legal education fee, and failed to report continuing legal education hours.

"7. On September 17, 1999, the Respondent called the Clerk of the Appellate Courts' office and requested information regarding reinstatement. On that same date, the Respondent called the Continuing Legal Education Commission, also requesting information regarding reinstatement.[2] Even though the Respondent placed two telephone calls in an attempt to find out how to regain his license to practice law in Kansas, the Respondent failed to take the necessary steps to be reinstated.

"8. For the compliance period ending June 30, 2000, the Respondent failed to pay the registration fee, failed to pay the continuing legal education fee, and failed to report continuing legal education hours.

---

"[2] The Respondent repeatedly testified that he 'did not recall' whether he placed the telephone calls to the Clerk of the Appellate Courts and the Continuing Legal Education Commission. However, at the time the calls were placed, the Respondent did not have a partner or anyone in his employ who might have made the telephone calls."

"9.  In October, 2000, Forrest Oberg retained the Respondent to represent him in a limited civil action that had been filed against Mr. Oberg and his son in the District Court of Johnson County, Kansas, by Manny's Bonding Company. Mr. Oberg had previously served as a co-signor on bond written to ensure Mr. Oberg's son's appearance in a criminal case. Apparently, Mr. Oberg's son failed to appear at a court hearing and the bond was forfeited. Thereafter, Manny's Bonding Company instituted the subject limited civil action. Mr. Oberg hired the Respondent to contest the action. At that time, Mr. Oberg paid the Respondent $100.00. Later, Mr. Oberg paid the Respondent an additional $750.00.

"10.  On October 19, 2000, the Respondent appeared in the District Court of Johnson County, Kansas, in behalf of Mr. Oberg at the 'answer docket.' The Respondent entered his appearance and a general denial. The matter was scheduled for trial on November 16, 2000. While discussing the case, the Respondent informed Kevin Dellett, counsel for Manny's Bonding Company that he had a 'problem' with some continuing legal education hours. At that time, the Respondent did not inform Mr. Dellett that the Respondent's license to practice law was suspended.

"11.  During the morning hours of November 16, 2000, the Respondent contacted Mr. Dellett seeking a continuance, because his 'Kansas counsel' was unable to attend the hearing. Mr. Dellett questioned the Respondent's need for local counsel. The Respondent reminded Mr. Dellett of his 'problem' with the continuing legal education hours. The Respondent then informed Mr. Dellett, for the first time, that the Respondent's license to practice law in Kansas was suspended. Mr. Dellett told the Respondent that he would not agree to a continuance unless Mr. Dellett's client would agree to it.

"12.  The Respondent and Mr. Oberg met in the courthouse prior to trial. At that time, the Respondent informed Mr. Oberg that the Respondent had a 'small problem.' The Respondent told Mr. Oberg that he was going to try to get the matter continued, but that if he was unable to do so, Mr. Oberg would have to represent himself.

"13.  The Respondent appeared with Mr. Oberg in the District Court of Johnson County, Kansas. At the time the case was called, Mr. Dellett was not present in the courtroom. However, Mr. Dellett's partner, Michael A. Halleran, appeared in his stead. After the parties entered their appearances, Mr. Halleran informed the court that he had concerns about the Respondent's authorization to practice law in Kansas. Shortly thereafter, Mr. Dellett arrived. Because the court was addressing other cases at that time, Mr. Dellett, the Respondent, and their clients gathered in the hallway and discussed the case.

"14.  It was at that time that Mr. Oberg first learned that the Respondent's license to practice law in Kansas was suspended.

"15.  Thereafter, Mr. Oberg entered into negotiations with Mr. Dellett. Mr. Oberg and Mr. Dellett settled the case. Mr. Oberg confessed judgment and

agreed to pay $3,500.00. Manny's Bonding Company agreed to dismiss the case if Mr. Oberg paid the settlement amount. Thereafter, Mr. Oberg paid $3,500.00 to Manny's Bonding Company and Manny's Bonding Company dismissed the lawsuit.

"16.   After the parties informed the court of the settlement terms and at Mr. Dellett's insistence, the Respondent informed the court that he was suspended from the practice of law in Kansas.

"17.   On January 5, 2001, Mr. Dellett appeared before the Municipal Court of Overland Park, Kansas. At the time that he arrived, Mr. Dellett observed the Respondent sitting in a courtroom with a client. The Respondent's client was Oma LaMaster.

"18.   When appearing before the Municipal Court of Overland Park, Kansas, attorneys are required to sign a sign-in sheet. On the sign-in sheet, attorneys write their names, their Supreme Court numbers, and their client's name. The prosecutor meets with the attorneys in the order that they sign in. After meeting with the prosecutor in one courtroom, defense attorneys and their clients proceed to a second courtroom to appear before the judge.

"19.   At that time, Mr. Dellett approached the Respondent and asked him whether he had resolved his problem. The Respondent informed him that he had not. Mr. Dellett told the Respondent that he needed to make sure that everyone knew that he was not authorized to practice law in Kansas.

"20.   Mr. Dellett noticed that the Respondent signed the prosecutor's sign-in sheet 'Collins Hunter for Oma LaMaster' and listed his Kansas Supreme Court number . . . .

"21.   Mr. Dellett was in the courtroom when Ms. LaMaster appeared before the judge. At that time, Ms. LaMaster appeared *pro se*. The Respondent was not present in the courtroom. Judge Arnold-Berger asked Ms. LaMaster where her attorney was. Ms. LaMaster told the judge that the Respondent said something about needing to take a test, but was unable to do so until later in the month, and that she should request a continuance. Mr. Dellett informed Judge Arnold-Burger that the Respondent's license was under suspension. Judge Arnold-Burger granted Ms. LaMaster a continuance so she could obtain a new attorney.

"22.   From the time he was suspended in November, 1998, and continuing through January 5, 2001, the Respondent actively practiced law in Kansas.

"23.   It was not until mid-January, 2001, and upon advice of his counsel, that the Respondent notified his clients, opposing counsel, and the courts that his license to practice law in Kansas was suspended.

"24.   After paying the necessary fees, attending continuing legal education courses, and reporting the necessary number of continuing legal education hours, on March 29, 2001, the Kansas Supreme Court reinstated the Respondent's license to practice law. At the time he was reinstated, Trish Heim of the Clerk of

the Appellate Court's office forwarded to the Respondent a copy of the Reinstatement Order and the Respondent's Supreme Court card.[3]

"25. The Respondent refunded $850.00 to Mr. Oberg for unearned attorney fees. Shortly before the disciplinary hearing, the Respondent paid Mr. Oberg $3,500.00. At the hearing on this matter, Mr. Oberg testified that, even though on November 16, 2000, the Respondent had put him in terrible position, he was satisfied by the payment of full restitution and had no personal grievance with Respondent.

## "CONCLUSIONS OF LAW

"1. Based upon the above findings of fact, the Hearing Panel concludes, as a matter of law, that the Respondent violated KRPC 1.4(b), KRPC 1.16(a)(1), KRPC 5.5(a), KRPC 8.4(d), Kan. Sup. Ct. R. 208(a), and Kan. Sup. Ct. R. 218(a), as detailed below.

"2. KRPC 1.4(b) provides: '[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.' *Id.* The Respondent failed to inform Mr. Oberg regarding the status of his license and Mr. Oberg's need to obtain other counsel prior to the scheduled hearing. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(b).

"3. Attorneys are prohibited from representing clients when that representation will result in a violation of the Kansas Rules of Professional Conduct or other law. *See* KRPC 1.16(a)(1). In this case, the Respondent's representation of Mr. Oberg violated KRPC 5.5 (the unauthorized practice of law). Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.16(a)(1).

"4. KRPC 5.5 prohibits the unauthorized practice of law. Because the Respondent continued to practice law after his license to do so had been suspended, the Hearing Panel concludes that the Respondent violated KRPC 5.5.

"5. 'It is professional misconduct for a lawyer to: . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The Respondent violated this provision by failing to inform Mr. Oberg that he was unable to practice law in Kansas and leaving Mr. Oberg unrepresented at a scheduled trial.

"6. Kan. Sup. Ct. R. 208(a) provides:

---

"[3] At the hearing on this matter, during questioning by his attorney, the Respondent testified that he received his Supreme Court card in the mail in July, 2000. However, when questioned by the Deputy Disciplinary Administrator, the Respondent testified that he 'discovered' the Supreme Court card in his 'folder' the night before the hearing. The Respondent then testified that he did not remember when he received his Supreme Court card in the mail and that he may have received it in July, 2000, because of the date of the card. The Hearing Panel believes that the Respondent was attempting to deceive the Hearing Panel through his testimony."

'All attorneys, including justices and judges, admitted to the practice of law before the Supreme Court of the State of Kansas shall annually, on or before the first day of July, register with the Clerk of the Appellate Courts upon such forms as the Clerk shall prescribe; provided that in the year of an attorney's admission to the bar, the attorney shall register within thirty days after the date of admission. At the time of each registration, each registrant shall pay an annual fee in such amount as the Supreme Court shall order. Attorneys may register as: active; inactive; retired; or disabled due to mental or physical disabilities. Only attorneys registered as active may practice law in Kansas.'

*Id.* The Respondent failed to 'register with the Clerk of the Appellate Courts' and 'pay an annual fee' as required by Kan. Sup. Ct. R. 208(a). Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 208(a).

"7.    Attorneys who are suspended, for any reason, are required to notify their clients, opposing counsel, and the courts of the suspension. *See* Kan. Sup. Ct. R. 218(a). That rule provides:

'In the event any attorney licensed to practice law in Kansas shall hereafter be . . . suspended from the practice of law pursuant to these Rules, . . . such attorney shall forthwith notify in writing each client or person represented by him or her in pending matters, of his or her inability to undertake further representation of such client after the effective date of such order, and shall also notify in writing such client to obtain other counsel in each such matter. As to clients involved in pending litigation or administrative proceedings, such attorney shall also notify in writing the appropriate court or administrative body, along with opposing counsel, of such inability to further proceed, and shall file an appropriate motion to withdraw as counsel of record.'

*Id.* In this case, the Respondent was suspended on November 4, 1998. It was not until mid-January, 2001, that the Respondent notified his clients, opposing counsel, and the courts of his suspension. Accordingly, Hearing Panel concludes that the Respondent failed to 'forthwith notify in writing each client or person represented by him or her in pending matters,' in violation of Kan. Sup. Ct. R. 218(a).

"[8].    The Disciplinary Administrator alleged in the Formal Complaint that the Respondent also violated KRPC 1.1 and KRPC 1.3. The evidence does not support findings that the Respondent violated KRPC 1.1 and KRPC 1.3. Therefore, the allegations in the Formal Complaint that the Respondent violated KRPC 1.1 and KRPC 1.3, are dismissed.

## "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the administration of justice and his profession.

"*Mental State.* The Respondent knowingly violated his duty to the administration of justice and his profession by not maintaining the license requirements for continuing to practice in Kansas while accepting representation of clients in Kansas courts.

"*Injury.* Mr. Oberg and Ms. LaMaster suffered at least potential injury as a result of the Respondent['s] misconduct. While Mr. Oberg paid the Respondent attorney fees and paid the judgment initially, the Respondent has reimbursed Mr. Oberg for these payments. There is no information in the record as to whether the Respondent repaid Ms. LaMaster for any attorney fees Ms. LaMaster paid the Respondent. [At oral arguments before the Kansas Supreme Court, the Respondent said he had repaid Ms. LaMaster.]

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Multiple Offenses.* The Respondent violated KRPC 1.4(b), KRPC 1.16(a)(1), KRPC 5.5(a), KRPC 8.4(d), Kan. Sup. Ct. R. 208(a), and Kan. Sup. Ct. R. 218(a). As such, the Respondent committed multiple offenses on multiple clients.

"*Deceptive Practices During Disciplinary Process.* It appears that the Respondent engaged in deceptive practices regarding three subject matters: (1) whether the Respondent placed the telephone calls to the Continuing Legal Education Commission and to the Clerk of the Appellate Courts, (2) when did the Respondent learn that his license had been suspended, and (3) when did the Respondent receive his Supreme Court card in the mail.

*"Whether the Respondent placed the telephone calls to the
Continuing Legal Education Commission and to the Clerk of the
Appellate Courts?*

"Records from the Continuing Legal Education Commission indicate that the Respondent placed a telephone call to the commission on September 17, 1999, requesting information on reinstatement. Additionally, records from the Clerk of the Appellate Courts indicated, likewise, that a telephone call was made that day regarding the necessary steps the Respondent would have to take to be reinstated in Kansas.

"At the hearing on this matter, the Respondent testified that he 'did not recall' making the telephone calls to the Continuing Legal Education Commission and the Clerk of the Appellate Courts. On this point, the Respondent's testimony lacks credibility. The Hearing Panel concludes that the Respondent placed the telephone calls and that the Respondent engaged in deceptive practices when he testified that he 'did not recall' placing the telephone calls.

*"When did the Respondent learn that his license
had been suspended?*

"Throughout the disciplinary process, the Respondent has maintained that Mr. Dellett informed the Respondent that the Respondent's license had been suspended. However, Mr. Dellett testified that the Respondent indicated that he had a 'problem' with continuing legal education hours in October, 2000. Mr. Dellett further testified that on November 16, 2000, the Respondent informed him that the Respondent's license was suspended.

"In various items of correspondence, the Respondent has indicated that he learned of the suspension from Mr. Dellett during December, 2000, November, 2000, and October, 2000.

"On January 10, 2001, the Respondent self-reported that he engaged in the unauthorized practice of law. In his letter to Disciplinary Administrator Stan Hazlett, the Respondent stated that in December, 2000, Mr. Dellett informed the Respondent that his license was under suspension.

"In his February 20, 2001, letter to Mr. Diehl, the Respondent stated that he was not aware that his license to practice law in Kansas was suspended until confronted by Mr. Dellett [on November 16, 2000].

"On June 6, 2001, the Respondent wrote to Mr. Michael E. Whitsitt, attorney investigator for the Johnson County Ethics and Grievance Committee. In the letter, the Respondent indicated that he 'actually found out that [he] was suspended in Kansas . . . in October, 2000.' On June 13, 2001, the Respondent wrote to Mr. John M. Parisi, attorney investigator for the Johnson County Ethics and Grievance Committee. In the letter to Mr. Parisi, the Respondent indicated that he learned of his suspension in October, 2000.

"Finally, at the hearing on this matter, the Respondent testified that he first learned of the suspension from Mr. Dellett in the October/November, 2000, time period.

"Certainly the Respondent knew that his license was suspended by November 28, 2000, because on that date the Respondent wrote to the Clerk of the Appellate Courts and to the Continuing Legal Education Commission.

"Consistent with the records of the Continuing Legal Education Commission, the records of the Clerk of the Appellate Courts, and the memory of Mr. Dellett, the Hearing Panel concludes that the Respondent knew of his suspension on or before September 17, 1999. Accordingly, the Hearing Panel concludes that the Respondent engaged in deceptive practices when he testified that he did not learn of the suspension until the October/November, 2000, time period.

*"When did the Respondent receive his Supreme Court card
in the mail?*

"At the hearing on this matter, during questioning by his attorney, the Respondent testified that he received his Supreme Court card in the mail in July, 2000. However, when specifically questioned by the Deputy Disciplinary Administrator,

the Respondent admitted that he did not remember when he received his Supreme Court card in the mail and that he may have received it after he was reinstated. The Respondent's inconsistent testimony is further evidence that the Respondent engaged in deceptive practices during the disciplinary process.

"*Substantial Experience in the Practice of Law.* The Respondent was admitted to the practice of law in Maryland in 1992. The Respondent was admitted to the practice of law in Missouri in 1996. Finally, the Respondent was admitted to the practice of law in Kansas in 1997. At the time the Respondent committed the misconduct, the Respondent had been practicing law and attending continuing legal education courses for six years. On the other hand, the Hearing Panel believes this factor to be mitigated by the fact that during much of the Respondent's practice he was in the Judge Advocate General corps and a Missouri Public Defender where most of the administrative details for licensing were handled for him and fees were waived.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of Prior Disciplinary Record.* The Respondent has not previously been disciplined.

"*Absence of Dishonest or Selfish Motive.* The Respondent's misconduct, that being the unauthorized practice of law, was not motivated by dishonesty and selfishness. The Respondent was licensed to practice in Missouri and that is where the predominate portion of his practice is located.

"*Restitution.* The Respondent not only refunded the attorney fees paid by Mr. Oberg, but also repaid Mr. Oberg for the entire amount of the settlement in the limited civil action.

"*Remorse.* At the hearing on this matter, the Respondent expressed remorse for engaging in the misconduct.

"*Statement by the Complainant Expressing Satisfaction with Restitution.* Mr. Oberg testified that he was satisfied with the restitution paid by the Respondent.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.62. That standard provides that '[s]uspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.' *Id.* In this case, the Respondent knowingly deceived Mr. Oberg by failing to inform him, at the time he was retained, that the Respondent's license to practice law in Kansas was under suspension.

"The Hearing Panel unanimously recommends that Respondent be suspended from the practice of law in Kansas for a period of ninety days.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

A finding of attorney misconduct requires proof "by clear and convincing evidence." Supreme Court Rule 211(f) (2001 Kan. Ct.

R. Annot. 259). The panel's findings of fact are supported by clear and convincing evidence and, with the conclusions of law, are adopted as the findings of this court.

IT IS THEREFORE ORDERED that E. Collins Hunter II is hereby suspended from the practice of law in the State of Kansas for a period of 90 days from May 31, 2002, the date of our opinion.

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218(a) (2001 Kan. Ct. R. Annot. 276), and, at the end of the 90-day suspension, the Respondent will be reinstated upon furnishing proof of compliance thereof to the Clerk of the Appellate Courts, that the costs of the proceeding be assessed to the Respondent, and that this opinion be published in the official Kansas Reports.