No. 98,844

In the Matter of GEORGE W. SWISHER, *Respondent.*

(179 P.3d 412)

Opinion filed March 28, 2008.

*Janith A. Davis,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* disciplinary administrator, was with her on the formal complaint for petitioner.

*George W. Swisher,* respondent, argued the cause pro se.

*Per Curiam:* This is an original contested proceeding in discipline filed by the Disciplinary Administrator against Respondent, George W. Swisher, an attorney admitted to the practice of law in Kansas on October 4, 1991, albeit Respondent was suspended from the practice of law for 2 years on March 8, 2002, and has not requested reinstatement. See *In re Swisher,* 273 Kan. 143, 41 P.3d 847 (2002). The Respondent's last registration address filed with the Clerk of the Appellate Courts of Kansas is in Oskaloosa, Kansas.

The proceedings against Respondent were instigated following a report from another attorney and involved the Respondent's actions in attempting to assist a friend who was experiencing some financial difficulties during the period in which Respondent was suspended from the practice of law. The formal complaint, filed June 25, 2007, specifically charged Respondent with having violated the following sections of the Kansas Rules of Professional Conduct (KRPC): KRPC 1.1 (2007 Kan. Ct. R. Annot. 384) (competence); KRPC 1.7 (2007 Kan. Ct. R. Annot. 440) (conflict of interest); KRPC 1.16(a) (2007 Kan. Ct. R. Annot. 487) (declining or terminating representation); and KRPC 5.5 (2007 Kan. Ct. R. Annot. 539) (unauthorized practice of law).

An assigned panel of the Kansas Board for Discipline of Attorneys conducted a hearing March 1, 2007, at which Respondent appeared pro se. The Disciplinary Administrator presented the testimony of the reporting attorney, the Respondent, and the friend that Respondent attempted to assist. The panel issued a final hear-

ing report which contained its factual findings, conclusions of law, and recommendations for discipline.

## FACTUAL FINDINGS

Following is a recitation of the relevant portions of the panel's factual findings with certain personal information redacted:

### "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

. . . .

"2.  On March 8, 2002, the Kansas Supreme Court suspended the Respondent's license to practice law for a period of two years for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.2, KRPC 8.4(a), KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g). In its opinion, the Court imposed the requirement that the Respondent apply for reinstatement and undergo a hearing pursuant to Kan. Sup. Ct. R. 219. To date, the Respondent has not sought the reinstatement of his law license and his license remains suspended.

"3.  [J.P.] and the Respondent have been friends for many years. Prior to his suspension, the Respondent provided [J.P.] with representation. Following his suspension, the Respondent informed [J.P.] that his license to practice law had been [suspended].

"4.  [J.P.] began having financial difficulties. Even though she knew that the Respondent's license to practice law had been suspended, [J.P.] sought assistance from the Respondent regarding her financial difficulties. [J.P.] owned her home in Oskaloosa, Kansas, and had some amount of equity in the house. She wanted to sell her house and use the equity to pay her creditors. For some reason, [J.P.] was unable to determine the precise amount she owed on the mortgage.

"5.  The Respondent paid to have her house appraised and the value of the house was determined to be $114,000. Because the home needed certain repairs completed, the Respondent offered to purchase the house for $104,000. The Respondent promised [J.P.] that if he purchased the home, fixed it up, and realized a profit on a subsequent sale, that he would share the profit with her. However, when the Respondent attempted to obtain a loan to purchase the home, he was unable to do so because foreclosure proceedings were pending.

"6.  Without consulting with a licensed attorney, [J.P.] decided to file for the protections of the bankruptcy laws. And, because the bankruptcy laws were about to change, time was an important factor for [J.P.]. Even though, the Respondent had no experience in practice of bankruptcy law, the Respondent advised [J.P.] regarding bankruptcy law and assisted [J.P.] in completing the bankruptcy filing document. Specifically, the Respondent advised [J.P.] to file bankruptcy pursuant to Chapter 7.

"7.  On October 14, 2005, [J.P.] filed the petition. The Respondent signed the petition as a non-attorney petition preparer, pursuant to 11 U.S.C. § 110. Ac-

cording to the certification, the Respondent received a fee for preparing the petition. However, the Respondent did not receive a fee.

"8.  At the time [J.P.] was preparing to file for bankruptcy protections, she resided in her home in Oskaloosa. As a result, she could have exempted the real property under the 'homestead' provision, allowing her to retain the equity in the home.

"9.  The Respondent advised [J.P.], however, not to exempt her home because it was his understanding that the home would become an asset of the estate and any profit from the sale of the home would go toward [J.P.]'s debts in the bankruptcy case. However, based upon the Respondent's advice, she did not exempt her home. As a result, [J.P.]'s home became the property of the bankruptcy trustee. In the event the bankruptcy trustee was able to sell the home, the trustee could have used the equity to pay debts that would normally have been discharged in the bankruptcy.

"10.  During the pendency of the bankruptcy petition, the Respondent prepared a contract to purchase [J.P.]'s home for $110,000. [J.P.] took the contract to the bankruptcy trustee for approval. However, the contract post-dated the bankruptcy petition, so [J.P.] did not have authority to enter into a contract for the sale of the house.

"11.  After the bankruptcy was filed, [J.P.] learned that her wages were being garnished. When [J.P.] informed the Respondent about the garnishment, he suggested that [J.P.] consult with an attorney who practices in the area of bankruptcy law. The Respondent suggested that [J.P.] consult with Jerry Harper.

"12.  On January 20, 2006, [J.P.] met with Mr. Harper. Mr. Harper informed [J.P.] that she need not have filed the bankruptcy. He reasoned that there was sufficient equity in the house to pay all of the creditors. He told her that if she did not desire to remain in the house in Oskaloosa, she could have sold the house and used the equity to pay off all of her creditors. He also informed her that she should have exempted her house to avoid losing the equity in the home. Finally, he told her that because she had now moved from the home, she could not amend the petition to claim the exemption, as residence in the home was a requirement for the exemption.

"13.  After meeting with [J.P.], Mr. Harper wrote to the Respondent and told him that he had violated the Kansas Rules of Professional Conduct. Mr. Harper suggested that the Respondent report his conduct. Because the Respondent did not self-report the misconduct within a couple of weeks, Mr. Harper forwarded a letter of complaint to the Disciplinary Administrator's office."

In his brief, Respondent purports to challenge some of the panel's factual findings, but specifically "does not object with the findings of law as presented in the final report."

The court's role in a disciplinary proceeding is to consider the evidence, the findings of the disciplinary panel, and the arguments

of the parties to determine whether violations of the Kansas Rules of Professional Conduct have occurred, and, if so, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Comfort*, 284 Kan. 183, 190, 159 P.3d 1011 (2007); *In re Landrith*, 280 Kan. 619, 636, 124 P.3d 467 (2005); see also Supreme Court Rule 211(f) (2007 Kan. Ct. R. Annot. 304) (misconduct to be established by clear and convincing evidence). Moreover, this court

"view[s] the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory only, but we give the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence." *Comfort*, 284 Kan. at 190.

First, Respondent points out that the panel's reference to the location of his friend's home was inaccurate. The Disciplinary Administrator agrees that the house is actually located in McLouth, rather than Oskaloosa. However, as Respondent acknowledges, the location of the dwelling is not material to the issues presented, and we will simply note the error.

Next, Respondent disputes that portion of the panel's finding in paragraph 6 which states that he advised his friend to file bankruptcy pursuant to Chapter 7. Respondent contends that he merely gave his friend general information about the effect of a Chapter 13 proceeding versus a Chapter 7 proceeding, which he characterized in his brief as "there is a plan that a person can make payments into the Court and repay their debts and a plan that wipes out a persons [*sic*] debts." Respondent asserts that his friend could have garnered the same information from television commercials.

J.P.'s testimony before the panel clearly established that, in selecting the type of bankruptcy proceeding and the exemptions to claim, she was relying on the information which Respondent provided her, regardless of how general or technically inaccurate that information might have been. J.P. said that Respondent knew what she was trying to do, she trusted him, and she believed "whatever he said was better." At the hearing, J.P. could not recall under

which chapter her bankruptcy had been filed. She clearly perceived that Respondent was recommending the type of proceeding reflected in the forms which the Respondent prepared. Notwithstanding the Respondent's apparent subjective belief that he was not explicitly giving legal advice, the evidence before the panel supports its findings.

Respondent also quibbles with the panel's finding that J.P. was living in the McLouth house at the time of the bankruptcy filing. He contends that she was spending most nights in Kansas City at the time. Curiously, in completing the bankruptcy forms, Respondent listed the McLouth house as the debtor's residence and explained in Form 7, Statement of Financial Affairs, that the debtor was "moving right now [*sic*] should be moved within 2 weeks."

Respondent also insists that he did not counsel against the claiming of a homestead exemption on the McLouth residence, but rather he simply advised J.P. that she would need to be truthful with the bankruptcy trustee about her living arrangements. Nevertheless, the evidence elicited from J.P. and the reporting attorney supports a finding that J.P. possessed no meaningful understanding of the concept of a homestead exemption and that she relied on Respondent to fill out the bankruptcy schedules in a manner that would be in her best interests.

Finally, Respondent asserts that J.P. has suffered no actual damage or injury, but rather that she is in the same position as she was prior to the bankruptcy filing. That contention is clearly controverted by the evidence elicited from the reporting attorney, who is experienced in the area of bankruptcy. In a letter to J.P., the reporting attorney explained that the course of action taken would unnecessarily cost her that portion of the equity in her home that would be paid in trustee's fees and in satisfying unsecured creditors, which appeared to be as much as $20,000.

In summary, we find that the panel's factual findings are, in all relevant respects, supported by clear and convincing evidence.

## CONCLUSIONS OF LAW

From its factual findings, the hearing panel reached the following legal conclusions:

"CONCLUSIONS OF LAW

"1.  The Deputy Disciplinary Administrator alleged that the Respondent violated KRPC 1.1, KRPC 1.7, KRPC 1.16(a), and KRPC 5.5. However, this case is not about whether the Respondent did a competent job representing his client and whether he engaged in a conflict of interest with his client, it is about whether the Respondent engaged in the unauthorized practice of law. It is dangerous territory for the Hearing Panel to suggest that the inquiry into cases like this one extends beyond the issue of whether or not a suspended lawyer practiced law when he was prohibited from doing so. Thus, the Hearing Panel considers only whether the Respondent violated KRPC 5.5.[1]

"2.  KRPC 5.5(a) prohibits attorneys from engaging in the unauthorized practice of law. Throughout the time the Respondent was providing advice to [J.P.] regarding her financial problems, the proposed sale of her home, and the bankruptcy filing, the Respondent's license to practice law was suspended. So, during that time period, from 2003 to the present, the Respondent was not authorized to provide [J.P.] or anyone else with legal advice.

"3.  In this case, just like in *In re Arthur*, 15 B.R. 541[, 546] (1981), 'we are not confronted with the mere preparation of a petition.' Here, as in *Arthur*, the Respondent provided 'advice and counseling on the relative advantages of filing a petition for liquidation under Chapter 7 versus filing a petition for an adjustment of debts under Chapter 13.' In addition, the Respondent, like Arthur, provided advice regarding which exemptions to claim.

"4.  The Respondent's advice about which chapter to file in bankruptcy and the Respondent's advice not to exempt her house amounts to legal advice. *Arthur*, 15 B.R. at 746; *In re Webster*, 120 B.R. 111 (1990). Thus, the Respondent violated KRPC 5.5(a) by engaging in the unauthorized practice of law."

## Unauthorized Practice of Law

The specific rule applicable here, KRPC 5.5(a), provides: "A lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." 2007 Kan. Ct. R. Annot. 539.

" ' "As the term is generally understood, the 'practice' of law is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter

---

[1] However, by no means does the Hearing Panel wish this note to somehow mean that the Respondent provided good advice to [J.P.]. The evidence is clearly to the contrary.

may or may not be depending in a court." *State ex rel. v. Perkins,* 138 Kan. 899, 907-08, 28 P.2d 765 (1934) (quoting *Eley v. Miller,* 7 Ind. App. 529, 34 N.E. 836).'" *In re Juhnke,* 273 Kan. 162, 166, 41 P.3d 855 (2002).

As the hearing panel noted, in the specific area of bankruptcy law, providing advice and counsel on "the relative advantages of filing a petition for liquidation under Chapter 7, versus filing a petition for the rearrangement of debts under Chapter 13" amounts to the practice of law because the advice requires the use of legal judgment requiring legal knowledge, skill, and ability beyond those possessed by a layman. *Matter of Arthur,* 15 Bankr. 541, 547 (Bankr. E.D. Pa. 1981). The Pennsylvania Bankruptcy Court also found that advice and counseling concerning exemptions, dischargeability, and automatic stay provisions of the Bankruptcy Code constitutes the practice of law. 15 Bankr. at 547. See also *In re Glad,* 98 Bankr. 976, 978 (D. Cal. 1989) (finding layperson who interviewed and solicited information from debtor with regard to financial status, advised debtor to file Chapter 11, and assisted debtor in preparation of the bankruptcy schedules provided legal services and thereby engaged in the practice of law under California law); *In re Bush,* 275 Bankr. 69, 78-79 (Bankr. D. Idaho 2002) (noting that bankruptcy petition preparers may type forms and can properly perform essentially no other service); *In re Robinson,* 162 Bankr. 319, 325-26 (Bankr. D. Kan. 1993) (finding that defendants engaged in the unauthorized practice of law under the standards of Kansas law by providing legal assistance to debtors in preparing their bankruptcy petitions, schedules, and applications to pay their filing fees in installments; the defendant's acknowledgment that he is not an attorney and statements in the bankruptcy questionnaire instructions that debtors are filing pro se because the agency does not give legal advice does not negate the facts established by the evidence); *In re Skobinsky,* 167 Bankr. 45, 50-51 (E.D. Pa. 1994) (finding that bankruptcy petition preparer engaged in the unlawful practice of law where the preparer discussed various chapters with his customers, instructed them on how to fill out the forms, filed forms with the clerk on his customers' behalf, and instructed debtors not to fill out the exemptions schedules based upon his erroneous interpretation of the applica-

ble bankruptcy law); *In re Webster*, 120 Bankr. 111, 113 (Bankr. E.D. Wis. 1990) (finding that a layperson who advised and counseled pro se debtor with respect to completion of bankruptcy petition, statement of affairs, and schedules, including which exemptions debtor should claim was exercising legal judgment and thereby engaged in the unauthorized practice of law); *In re Herren*, 138 Bankr. 989, 995 (Bankr. D. Wyo. 1992) (finding that "[a]dvising of available exemptions from which to [choose], defining terms in the schedules, directing what property is appropriately listed in various areas, summarizing and reformulating the information solicited from clients, advising clients regarding responsibility to list all debts and the option of voluntary repayment and similar actions, all require exercise of legal judgment beyond the capacity and knowledge of lay persons").

As noted, Respondent did not object to the panel's "findings of law as presented in the final report." We concur and adopt the panel's conclusion that Respondent engaged in the unauthorized practice of law.

*Other Alleged Violations*

The Disciplinary Administrator takes issue with the panel's conclusion that its inquiry was limited to determining whether Respondent engaged in the unauthorized practice of law and that it should refrain from considering the competence and conflict of interest allegations. As the Disciplinary Administrator points out, such a conclusion is unsupported by any authority. See *In re Stover*, 278 Kan. 835, 838-39, 104 P.3d 394 (2005) (finding violations of KRPC 1.1 [2004 Kan. Ct. R. Annot. 342], 1.7[b] [2004 Kan. Ct. R. Annot. 391], 1.8[a] [2004 Kan. Ct. R. Annot. 396], and 3.4 [2004 Kan. Ct. R. Annot. 449], in addition to an unauthorized practice of law under KRPC 5.5[a] [2004 Kan. Ct. R. Annot. 469]); *In re Hunter*, 273 Kan. 1015, 1019, 1024, 46 P.3d 1199 (2002) (finding violation for unauthorized practice of law during suspension as well as additional violations); *In re Howlett*, 266 Kan. 401, 969 P.2d 890 (1998) (finding a violation of MRPC 8.4 [1998 Kan. Ct. R. Annot. 386] for criminal convictions arising out of the unauthorized practice of law).

Additionally, we find some guidance from *In re Wilkinson*, 251 Kan. 546, 834 P.2d 1356 (1992), which discussed whether a suspended attorney could be employed as a law clerk. There, this court noted that "[t]he suspended attorney remains a member of the Kansas Bar, subject to the provisions of the MRPC," and that the suspended attorney is subject to discipline if he or she "engages in the unauthorized practice of law *or in unethical professional conduct.*" (Emphasis added.) 251 Kan. at 553. In other words, a suspended attorney remains subject to each and every rule of professional conduct during the period of suspension, not just the prohibition in KRPC 5.5(a) (2007 Kan. Ct. R. Annot. 539). A suspension is not a free pass to ignore one's professional responsibilities.

The current case highlights that principle. If Respondent had possessed the requisite legal knowledge and skill to expertly guide J.P. through her financial difficulties, he would have nevertheless been in violation of KRPC 5.5(a) for practicing law while he was not authorized to do so. On the other hand, if Respondent had been duly authorized to practice law, he would have nevertheless been subject to the KRPC mandate that he provide competent counsel. The suspension did not absolve Respondent of his competence obligation, and the panel was presented with separate inquiries which were not mutually exclusive. Therefore, we will proceed to consider the other allegations.

*Competence*

As the panel's footnote indicates, the evidence clearly established that Respondent did not give J.P. good advice. The reporting attorney's letter to J.P. explains that, not only were the filed bankruptcy schedules disadvantageous to J.P., but the choice to pursue bankruptcy was ill-advised. Indeed, when asked whether he disputed the reporting attorney's claims, Respondent admitted that he did not possess sufficient bankruptcy knowledge to know whether the analysis in the letter was correct.

One perceives that Respondent did not feel constrained by his lack of bankruptcy knowledge and experience because he was simply helping a friend without charging a fee. However, the friend

knew that Respondent was an attorney, albeit she also knew that he was currently suspended. The friend clearly relied on Respondent to know what he was doing. In the context of attorney-client privilege, we have said that an attorney-client relationship "is sufficiently established when it is shown that the advice and assistance of the attorney is sought and received in matters pertinent to the profession. *Associated Wholesale Grocers, Inc. v. Americold Corp.,* 266 Kan. 1047, 1053, 975 P.2d 231 (1999)." *State ex rel. Stovall v. Meneley,* 271 Kan. 355, 374, 22 P.3d 124 (2001). Notwithstanding that Respondent may have lacked any pecuniary motive, he had an obligation to provide competent advice when J.P. sought his assistance. In the alternative, Respondent could have referred J.P. to competent counsel, which he was subsequently to do after the harm had been done.

In short, the record contains clear and convincing evidence to support our finding that Respondent violated KRPC 1.1 by failing to provide competent representation.

*Conflict of Interest*

At the time of the alleged violation, KRPC 1.7(b) (2006 Kan. Ct. R. Annot. 412) read as follows:

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

The Disciplinary Administrator points out that Respondent prepared a contract to purchase J.P.'s home for $110,000 when the home was listed in the bankruptcy petition for a value of $130,000. Moreover, the reporting attorney testified that J.P. said someone had expressed an interest in buying her home for $140,000. The Disciplinary Administrator argues that the scenario establishes a conflict because Respondent was fully aware of J.P.'s situation, the hearing panel found that J.P. was vulnerable, and Respondent did

not advise J.P. to have the contract reviewed by an independent attorney.

The evidence elicited by the Disciplinary Administrator did not clearly and convincingly establish a conflict of interest within the purview of the rule. The Disciplinary Administrator's suggestion that Respondent took advantage of J.P.'s vulnerability for personal gain is negated by the panel's finding of the mitigating factor that there was no selfish or dishonest motive in this case. Further, the panel's factual finding about the nature of the arrangement, whereby Respondent would purchase the property, fix it up for resale, and share any profit with J.P., indicates that the contract was in furtherance of Respondent's attempts to assist J.P. extinguish her debts, *i.e.*, Respondent reasonably believed that his representation would not be adversely affected by the contract. Granted, an attorney who enters into a business arrangement with a client must be vigilant in complying with the specific rules governing such an arrangement. Here, Respondent should have explained the implications of the potential conflict and should have urged J.P. to obtain independent counsel on the sale contract. Nevertheless, on the record before us, we decline to find that Respondent violated KRPC 1.7(b).

### Declining Representation

Under KRPC 1.16(a), "a lawyer shall not represent a client . . . if: (1) the representation will result in violation of the rules of professional conduct or other law." 2007 Kan. Ct. R. Annot. 487. By that definition, it would appear that, in most if not all instances, the unauthorized practice of law necessarily begets a violation of KRPC 1.16(a). We can appreciate the panel's reluctance to stack on multiple violations for essentially the same conduct. Nevertheless, the evidence clearly establishes that Respondent should have declined to provide J.P. with advice and assistance that called for the exercise of legal judgment. The record supports a violation of KRPC 1.16(a).

### APPROPRIATE DISCIPLINE

In recommending indefinite suspension, the final hearing report recited:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to the legal profession to comply with his suspension.

"*Mental State*. The Respondent negligently violated his duty.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual harm to [J.P.].

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on three occasions. On January 9, 2001, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.4(a). Then, on March 8, 2002, the Kansas Supreme Court suspended the Respondent from the practice of law for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.2, KRPC 8.4(a), KRPC 8.4(c), KRPC 8.4(d), and KRPC 8.4(g). Finally, in 2003, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.1 and KRPC 1.3.

"Vulnerability of Victim. [J.P.] was vulnerable to the Respondent's misconduct because she was a friend.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Dishonest or Selfish Motive. Dishonesty and selfishness were not motivating factors in this case.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. The Respondent fully cooperated in the disciplinary process as exhibited by his complete acknowledgment of the misconduct.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the remaining ABA Standards. In this case, it does not appear that any of the Standards are particularly on point. The following Standards, however, do offer some assistance:

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2.

'Disbarment is generally appropriate when a lawyer:

(a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.' Standard 8.1.

'Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.' Standard 8.2."

The Deputy Disciplinary Administrator agrees with the recommendation of the hearing panel to indefinitely suspend the Respondent. However, we are not constrained by the recommendations of either the panel or the Disciplinary Administrator as to the sanction to be imposed; such recommendations are advisory only. Supreme Court Rule 212(f) (2007 Kan. Ct. R. Annot. 317). In this instance, the recommendations appear to be entirely appropriate. Respondent was suffering under a sanction of suspension at the time of the current violations, and his testimony before the panel displayed a failure to fully appreciate the duty which he owes to his profession and to the public.

IT IS THEREFORE ORDERED that George W. Swisher be and he is hereby indefinitely suspended from the practice of law in the state of Kansas, effective on the date of this opinion.

IT IS FURTHER ORDERED that George W. Swisher shall comply with Supreme Court Rule 218 (2007 Kan. Ct. R. Annot. 337) and, if respondent seeks reinstatement, that he shall comply with Supreme Court Rule 219 (2007 Kan. Ct. R. Annot. 350); that he shall demonstrate that he knows, understands, and is willing to comply with the Kansas Supreme Court rules; and that he is competent to engage in the active and continuous practice of law in this state.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.